**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, | No. CV-23-01367-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Abbott Laboratories Incorporated, | |
| Defendant. | |

Before the Court are Plaintiff's Emergency Motion for Extension of Time to File a Response to Defendant's Motion for Summary Judgement (Doc. 218); Motion to Defer Ruling on Defendant's Motion for Summary Judgment (Doc. 228); and Motion for Reconsideration of the Court's Order denying Plaintiff's Motion for Terminating Sanctions (Doc. 248).  Also pending is Defendant's Motion for Summary Judgment (Docs. 196, 249); and Motion to Strike (Doc. 263).  The Court **denies** Plaintiff's Motions and **grants** Defendant's Motions for the reasons below.

## I.     BACKGROUND

This case stems from an employment dispute.  Plaintiff Daniel D'Agostino worked for Defendant Abbott Laboratories ("Abbott") from 2001–2003.  (Doc. 34 at 1.)  Plaintiff returned to the company in March 2022 as a Reliability Engineer at the Casa Grande, Arizona plant.  (*Id.*)  Ashin Soti was Plaintiff's direct supervisor from March 2022 through approximately September 2022.  (Doc. 249 at 10.)  Then, James Martinez became Plaintiff's direct supervisor until Plaintiff took short term disability on April 25, 2023.  (*Id.*)

Plaintiff states Defendant subjected him to disability and age-related discrimination and retaliation upon returning to Abbott, thereby causing severe anxiety and depression necessitating his short-term disability leave. (Doc. 35 at 20.)  Plaintiff extended this leave to long-term disability in October 2023, wherein Defendant terminated his employment. (*Id.* at 21.)

Plaintiff's First Amended Complaint alleged both disability and age-based discrimination, hostile work environment, and retaliation.  The Court dismissed with prejudice his disability claims but granted leave to amend his age-related claims. (Doc. 34 at 14.)  Plaintiff's Second Amended Complaint ("SAC") asserts claims for hostile work environment, retaliation, and discrimination based on his age. (Doc. 35.)  Defendants now move for summary judgment.

## II.    LEGAL STANDARD

### A.  Motion for Reconsideration

"The Court has discretion to reconsider and vacate a prior order."  *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).  However, "[m]otions for reconsideration are disfavored," *id.*, and "are appropriate only in rare circumstances." *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1302 (D. Ariz. 1995).  Accordingly, "[a] motion for reconsideration should not be used to ask the court to rethink what the court had already thought through—rightly or wrongly." *Id.* (citation modified).  Instead, these motions are only appropriate where the Court: "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust"; (3) is presented with "an intervening change in controlling law"; or (4) is otherwise presented with "other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### B.  Motion for Summary Judgment

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

- 2 -

Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.*

The burden initially falls on the movant to demonstrate the basis for a motion for summary judgment and "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has the burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

III.    DISCUSSION

    A.  Motion for Reconsideration

The Court first addresses Plaintiff's Motion for Reconsideration.  The Court denied Plaintiff's Motion for Terminating Sanctions because it was untimely.  Plaintiff argues the Court erred by doing so.  First, Plaintiff contends the Court erred by applying a discovery dispute timeliness requirement when he argued "fraud on the court," which is not subject to ordinary time limitations.  (Doc. 248 at 4.)  But calling something "fraud on the court" does not make it so; Plaintiff's Motion is substantively and materially a discovery dispute, citing Rules 26(g) and 37(c)(1) as authority for Defendant's alleged violations.  (Doc. 188 at 6.)

Fraud on the court must rise "to the level of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *United States v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011) (citation modified).  Plaintiff cannot simply use hyperbolic language to describe Defendant's innocuous behavior to find a "fraud on the court" foothold.  For example, Plaintiff describes Defendant's production of twelve duplicative emails as a "flooding" to "bury" Plaintiff and prevent him from finding "the single incriminatory one." (*Id.* at 10.)  The remaining examples of "fraud" in Plaintiff's Motion are either speculative or grossly exaggerated.  Plaintiff fails to convince the Court that Defendant committed fraud.  Accordingly, Plaintiff's Motion was subject to a timeliness requirement.

Second, Plaintiff contends that any timeliness bar must be tolled because he did not discover the "Answer Paradox" until November 2025.  (*Id.* at 2.)  This is not true.  Equitable tolling applies "where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Luna v. Holder*, 659 F.3d 753, 759 (9th Cir. 2011) (citation modified).  Here, Plaintiff's "Answer Paradox" is based on information provided by Defendants in their Interrogatory responses and subsequent statements at the March 6, 2025 hearing.  (Doc. 188 at 2.)  Thus, Plaintiff

had access to this information long before November 2025. Tolling is, therefore, not warranted.

Plaintiff's remaining contentions bemoan the Court's refusal to reach his arguments for sanctions due to the timeliness bar. Having found it did not err in precluding Plaintiff's Motion on timeliness grounds, the Court will not rethink its decision here. *See Fallay v. San Francisco City and County*, No. C 08-2261 CRB, 2016 WL 888901, at *2 (N.D. Cal. Mar. 8, 2016) ("A motion for reconsideration is not to be used as a means to reargue a case or to ask a court to rethink a decision it has made." (citation modified)).

Accordingly, the Court denies Plaintiff's Motion for Reconsideration.

### B. Procedural Defects

Before it can turn to Defendant's Motion for Summary Judgement, the Court must first address: Plaintiff's Emergency Motion for Extension of Time to File a Response to Defendant's Motion for Summary Judgement (Doc. 218); Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment (Doc. 228); and Defendant's Motion to Strike (Doc. 263).

Defendant filed its Motion for Summary Judgment on January 20, 2026. (Doc. 196). After order from this Court, Plaintiff's response was due March 6. (Doc. 211.) On February 27, Plaintiff filed an Emergency Motion for Extension of Time to File a Response to Defendant's Motion. (Doc. 218). The Court did not rule on that Motion. On March 6, Plaintiff did not file a Response. Instead, he filed a Motion to Defer Ruling given his pending Motion for Terminating Sanctions at the time. (Doc. 228.) Plaintiff then filed his Response to Defendant's Motion on March 18—twelve days after it was due. (Doc. 233.)

The Court denies as moot Plaintiff's Motion for Extension of Time to File a Response given that he has since filed his Response. The Court also denies as moot Plaintiff's request to Defer Ruling on Defendant's Motion for Summary Judgment because the Court has since denied Plaintiff's Motion for Terminating Sanctions—the basis of Plaintiff's request. Finally, although untimely, the Court exercises its discretion to consider Plaintiff's Response and Controverting Statement of Facts ("CSOF") in ruling on

- 5 -

Defendant's Motion.  *See* L.R. 7.2(i); *Hernandez v. Lynch*, No. EDCV 16-620 JGB (KKX), 2018 WL 10561972, at *3 n.2 (C.D. Cal. Dec. 6, 2018) ("The Court has discretion to consider a late-filed opposition brief.").  However, there are many problems with Plaintiff's responsive briefing.

First, Plaintiff's 203-page CSOF impermissibly includes lengthy narrative and explanatory arguments in violation of Local Rule 56.1(b).  Local Rule 56.1 "requires the controverting party to provide a specific record reference supporting the party's position if a fact is disputed; it does not permit explanation and argument supporting the party's position to be included in the response to the moving party's statement of facts." *Salazar v. Driver Provider Phx. LLC*, No. CV-19-05760-PHX-SMB, 2023 WL 7413663, at *2 (D. Ariz. Nov. 9, 2023) (citation modified).  Consequently, the Court has the discretion to disregard "everything but the word 'admitted' or 'disputed' and the corresponding references to the record." *Id.* (citation modified).  Therefore, the Court will not consider any explanation or argument inserted after "disputed" in support of Plaintiff's position as written in his CSOF.

Second, Plaintiff's Response impermissibly includes nine exhibits.  Of note, is Exhibit H which is an additional thirty-three-page CSOF apart from Plaintiff's original CSOF.  Plaintiff has already filed 2,236 pages of exhibits in support of his CSOF.  (Doc. 256.)  The responsive memorandum cannot act as a vehicle to supplement these exhibits.  Pursuant to Local Rule 56.1(e), the responsive memorandum "must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies in support of or in opposition to the motion."  Therefore, Plaintiff may not support contentions in his Response with citations to exhibits attached to the Response itself; he may only cite his CSOF.  Accordingly, the Court will disregard these exhibits.

Third, Plaintiff filed an unauthorized amended Response (Doc. 259) and CSOF (Doc. 260).  The Court previously granted in part and denied in part Defendant's Motion to Seal and ordered Defendant to refile its Motion for Summary Judgment and Separate

Statement of Facts accordingly.  In response to this refiling, Plaintiff filed an amended version of his Response and CSOF, including large additions and edits to his original filings.  The Court did not authorize these filings.  Accordingly, the Court grants Defendant's Motion and will strike (Docs. 259, 260) as unauthorized filings pursuant to Local Rule 7.2(m).

In sum, in analyzing Defendant's Motion for Summary Judgment below, the Court will: consider Plaintiff's untimely Response and CSOF; disregard any expositional argument in Plaintiff's CSOF (Doc. 229); disregard all exhibits attached to Plaintiff's Response (Doc. 233); and strike Plaintiff's unauthorized filings (Docs. 259, 260).

**C. Motion for Summary Judgment**

Defendant moves for entry of summary judgment on all of Plaintiff's claims. Plaintiff's SAC alleges three age-based claims: (1) hostile work environment; (2) retaliation; and (3) discrimination.  (Doc. 35 at 35–40.)  Defendant bears the initial burden to show the absence of a genuine dispute of material fact as to each claim.  If met, the burden shifts to Plaintiff to produce enough evidence to create a genuine, triable issue. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If not, Defendant's Motion succeeds.  *Id.*  The Court addresses each claim in turn.[1]

1. *Hostile Work Environment*

The SAC claims that Plaintiff was subjected to a hostile work environment based on his age.  (Doc. 35 at 36.)  "An age-based hostile work environment claim requires a plaintiff to show that: (1) he was subjected to verbal or physical conduct based on his age; (2) the conduct was unwelcome; and (3) the conduct was 'sufficiently severe or pervasive

---

[1] Given the Ninth Circuit's instruction to interpret EEOC charges and pro se litigant's complaints "liberally," and the precursor charge to view all facts at this stage in the light most favorable to Plaintiff, the Court cannot accept Defendant's exhaustion and timeliness arguments at this stage of the proceeding. *See Greenfield v. U.S. Marine Corps*, No. 12CV311 JLS POR, 2012 WL 1133184, at *3–4 (S.D. Cal. Apr. 4, 2012) (explaining that an EEOC charge may also encompass later allegations reasonably related to the charge); *Nardo v. Hawaii*, No. CIV. 08-00352JMS/LEK, 2008 WL 5082758, at *2 (D. Haw. Dec. 2, 2008) ("Although the Ninth Circuit has not directly addressed this issue, other courts have held that ADA and ADEA claims made beyond the 90–day limitations period may relate back to an original, timely pleading where the discrimination alleged in both is premised on the same facts.").  Nevertheless, the Court agrees with Defendant that all three claims fail on their merits.

to alter the conditions of employment and create an abusive work environment.'" *Castle v. Orenco Sys., Inc.*, No. 09-6142-HO, 2010 WL 5067964, at *3 (D. Or. Dec. 3, 2010) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)). Defendant argues that Plaintiff fails to establish the first and third elements. (Doc. 249 at 18–19.) The Court agrees as to the third element; Plaintiff fails to show that Defendant's age-based conduct was so severe that it created an abusive work environment.

a.  <u>Age-Based Conduct</u>

Plaintiff offers some evidence suggesting he was subjected to age discrimination. Plaintiff can show some inference of age-based conduct due to Defendant's favorable treatment of substantially younger employees.[2] *See Gnassi v. Toro*, No. 3:20-CV-06095-JHC, 2023 WL 3018447, at *8 (W.D. Wash. Apr. 20, 2023). Plaintiff points to four instances of differential treatment. After review, only the first and fourth instances are slightly probative of age-based conduct.

First, Plaintiff alleges Defendant denied his time off request—citing company policy that engineers cannot take time off two weeks before and during a plant shutdown—but permitted two younger employees, Alex Zemezonak and Sharina Arandia, to take vacation time during this period. (Doc. 233 at 10.) The Court finds that, in this situation, Zemezonak and Arandia are appropriate comparators. Both worked in the engineering department, were approved for time off either two weeks before or during the shutdown, and were substantially younger than Plaintiff. The shutdown started on September 23, 2022. (Doc. 256-9 at 175.) Thus, per Defendant's stated two-week bar, engineering department employees could not take time off before the shutdown from September 9 to September 23. Plaintiff requested time off on September 15, 19, and 20—all were denied. However, Plaintiff cites a company chart that shows Arandia was approved for vacation time from September 9 to September 13. (Doc. 35-1 at 120.) And,

---

[2] The Court notes there is no evidence of any verbal comments regarding Plaintiff's age. In Plaintiff's deposition, Defendant asked: "Did anyone at Abbott, when you were employed with the company as a senior reliability engineer, make any comments to you about your age?" (Doc. 251-1 at 34.) Plaintiff replied: "I don't remember. I don't remember anyone making comments about my age. It doesn't mean it didn't happen. I just don't remember." (*Id.*)

- 8 -

in Defendant's response to Plaintiff's interrogatories, they admit that Zemezonak "was approved for vacation or holiday leave for time" for one day during the shutdown. (Doc. 251-1 at 302.)   Finally, both Arandia and Zemezonak were substantially younger than Plaintiff at the time; Plaintiff was approximately 46 years old (Doc. 35 at 36), Arandia was approximately 29 years old (Doc. 251-1 at 302), and Zemezonak was approximately 30 years old (*Id.*).  *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (explaining that an age-gap is probative of age-based conduct where the comparator is "substantially younger than the plaintiff").  Accordingly, Plaintiff has provided some inferential evidence that Defendant's denial of his time-off request was based on his age.

Second, Plaintiff's Complaint alleges that Defendant gave Plaintiff's responsibilities to Steve Nerovich who was several years younger than Plaintiff.  (Doc. 35 at 26.)  However, Plaintiff admits that Nerovich is only "five or six years younger than me." (Doc. 229 at 28.)  "[T]o demonstrate whether a plaintiff was replaced by someone substantially younger than them, the Ninth Circuit has held that an average age difference of ten years or more between the plaintiff and their replacement(s) will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial." *Maluf v. Bergelectric Corp.*, No. 2:23-CV-00115-CDS-MDC, 2025 WL 1898053, at *10 (D. Nev. July 9, 2025) (citing *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015)).  To overcome this presumption, Plaintiff must provide evidence that Defendant considered his age to be significant.  *France*, 795 F.3d at 1174.  Plaintiff provides no such proof.  Accordingly, Nerovich is not a probative comparator for age discrimination.  *See Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981) ("If the replacement is only slightly younger than the plaintiff, then it is less likely that an inference of discrimination can be drawn.").

Third, Plaintiff alleges Defendant denied his request to work from home but allowed Zemezonak to work remotely.  (Doc. 233 at 10.)  But Zemezonak is an inapposite comparator because he is not similarly situated to Plaintiff in this scenario. *Vasquez*, 349 F.3d at 641 ("[I]ndividuals are similarly situated when they have similar jobs and display

similar conduct."). Zemezonak lived in Colorado, and Defendant hired him as a remote worker. (Doc. 251-1 at 302.) Conversely, Plaintiff lived in Arizona and was not hired as a remote worker. (Doc. 35 at 6.) Accordingly, Zemezonak is not an appropriate comparator to evidence age-based discrimination.

Fourth, Plaintiff alleges Defendant temporarily denied Plaintiff's requested access to MS Project, Concur, SolidWorks, M-Files, and SAP company software, but other substantially younger employees, Arandia and Zadravecz, both had access. (Doc. 233 at 10.) In an email to Ashin, Plaintiff complained that he had to ask Arandia to file his Engineering Studies on his behalf because she had access to M-Files but he did not. (Doc. 35-1 at 36.) However, Plaintiff does not explain who Zadravecz is. After reviewing Plaintiff's Response, CSOF, and SAC, Zadravecz remains a mystery. Accordingly, Plaintiff only presents evidence that one younger employee, Arandia, had access to a software Defendant denied to him.

In sum, Plaintiff has presented circumstantial evidence of two instances of Defendant's age-based conduct: (1) denying Plaintiff's time-off request but granting the same to substantially younger employees; and (2) denying Plaintiff software access granted to a substantially younger employee. Importantly, Plaintiff's remaining allegations of hostile treatment such as removal from team meetings, relegation to menial tasks, etc., fail to evidence any age-based intention; these allegations do not implicate Plaintiff's age or involve younger comparators. *See Lindblom v. Sec'y of Army*, No. 2:06-CV-2280-GEB-GGH, 2008 WL 640637, at *2 (E.D. Cal. Mar. 5, 2008), *aff'd sub nom.*, *Lindblom v. United States*, 366 F. App'x 793 (9th Cir. 2010) ("In order to make a showing of a hostile work environment based on age, Plaintiff must demonstrate a nexus between the alleged harassment and his age; merely citing instances of unpleasant treatment is not sufficient." (citation modified)). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent."

*Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Accordingly, the Court will only consider the two identified instances of age-based conduct in determining whether Defendant's conduct created an abusive work environment.

b.  Abusive Work Environment

A Plaintiff must show that the work environment was both subjectively and objectively hostile. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017). "When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance." *Giles v. San Joaquin Valley Rehab. Hosp.*, No. 121CV00732JLTSKO, 2023 WL 4551692, at *7 (E.D. Cal. July 14, 2023) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Reynaga*, 847 F.3d at 687 (citation modified).

Plaintiff's hostile work environment claim ultimately fails because the two instances of age-based conduct were isolated, infrequent, and minor. *Ortiz v. Fed. Bureau of Prisons*, No. 1:22-CV-00122 JLT SKO, 2023 WL 1447920, at *5 (E.D. Cal. Feb. 1, 2023) ("[I]solated incidents do not amount to a hostile work environment unless "'extremely serious.'" (quoting *Faragher*, 524 U.S. at 788)).  The one-time denial of a request to take three days off is not severe. *See, e.g.*, *Payne v. Cornell Univ.*, No. 18-CV-1442 (GTS/ML), 2021 WL 39684, at *16 (N.D.N.Y. Jan. 5, 2021), *aff'd*, No. 21-109-CV, 2022 WL 453441 (2d Cir. Feb. 15, 2022) (citing cases and explaining that "the denial of time off" is "insufficient to state a hostile work environment claim").  As to the temporary denial of software access, the evidence, at most, shows annoyance or inconvenience, not serious interference with Plaintiff's work performance.

As mentioned, Defendant temporarily denied Plaintiff access to five software programs: MS Project, M-Files, SAP, Concur, and SolidWorks. (Doc. 250 at 5.) However,

- 11 -

Plaintiff did not need access to some of these programs.  Concur is a software needed for travel expenses, and in Plaintiff's email responding to Defendant's denial he states: "I agree that I probably won't travel in the next 8 weeks but approving it doesn't cost anything." (Doc. 35-1 at 36.)  Plaintiff also did not need SolidWorks for the period he did not have access.  In his deposition, Plaintiff testified that "I don't recall any projects that I was not able to complete by not having SolidWorks before" Defendant later granted access.  (Doc. 251-1 at 182.)

Plaintiff really only attributes any disruption to his lack of access to M-Files and SAP.  (Doc. 233 at 10; Doc. 229 at 53, 56–57.)  Plaintiff argues that without access to M-Files he could not fulfill his job functions.  (Doc. 229 at 56.)  However, it appears the lack of access only necessitated working with other employees who did have access to the program: "I had to ask Sharina to write my recent Drone Change Request and Engineering Study for me because I didn't have access to M-Files."  (Doc. 35-1 at 36.)  But this only inconvenienced Plaintiff; it did not prevent him from performing his job: "I can continue asking people to write my CRs, Engineering Studies, and any other controlled documents but it's not making my job easier." (*Id.*)  Finally, the temporary lack of access to SAP, and subsequent training, only delayed Plaintiff from proceeding on a project for one month. (Doc. 229 at 56.)  These two disruptions, though frustrating, are not serious enough to create a hostile work environment; any interference was temporary and did not prevent Plaintiff from completing his work.  "Mere discomfort or inconvenience resulting from harassment in the workplace is not sufficient to create a hostile work environment." *Moore v. Potter*, No. 09-CV-746-AC, 2010 WL 3945221, at *14 (D. Or. Oct. 6, 2010), *aff'd sub nom.*, *Moore v. Donahoe*, 460 F. App'x 661 (9th Cir. 2011).

Based on the foregoing, Plaintiff's evidence is too sparse, isolated, and minor to support a claim that his "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (citation modified) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Accordingly, The Court grants summary judgment in Defendant's favor as to Plaintiff's hostile work environment claim.

### 2. *Retaliation*

To state a claim for retaliation under the ADEA, Plaintiff must show: (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) and "the adverse employment action would not have occurred but for [his] protected activity." *Vroom v. Johnson*, No. CV-14-02463-PHX-JAT, 2015 WL 3490086, at *6 (D. Ariz. June 3, 2015). Defendant challenges the sufficiency of all three elements. The Court finds that Plaintiff can show he engaged in a protected activity, but fails to show the requisite causal nexus between any alleged adverse action and that activity.

However, before turning to Plaintiff's ADEA retaliation claim, the Court addresses a threshold issue:

> [A] plaintiff may bring a retaliation claim only under the statute under which he alleged the protected activity—that is, a Title VII retaliation claim can only allege reprisal for engaging in prior protected activity reporting race, religion, gender, and national origin discrimination; an ADEA retaliation claim can only allege reprisal for engaging in prior protected activity reporting age discrimination; and so on.

*McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2016 WL 946099, at *12 (N.D. Cal. Mar. 14, 2016). Here, Plaintiff's SAC only cites the ADEA for his pertinent retaliatory claim. Although he vaguely states he seeks to hold Defendant accountable for "retaliatory actions in violation of federal law," this is insufficient. (Doc. 35 at 5.) Plaintiff must identify the law that protects his activity. Even so, Plaintiff disclaims any other federal statute by which he could bring an additional retaliation claim.

First, his SAC states, "Plaintiff reserves the right to seek leave to amend to include additional accounts that will address the full scope of Abbott's unlawful conduct" including "Violations of the Whistleblower Protection Act." (*Id.*) Plaintiff has not amended his SAC to include this claim. So, here, Plaintiff has foregone a retaliation claim based on any alleged whistleblower activity.

Second, although Plaintiff states Defendant retaliated against him for informing

Defendant of potential violations of Food and Drug Administration ("FDA") regulations and for filing a complaint with the FDA, he specifically disclaims pursuing this claim under the statute that protects this activity—the Food Safety Modernization Act ("FSMA"). The FSMA prohibits an employer engaged in food manufacturing and distribution from retaliating against an employee for such reports. 21 U.S.C. § 399d(a)(1). Plaintiff does not cite the FSMA in his SAC, but Defendant assumed he intended to and argued accordingly in its Motion. (Doc. 249 at 16.) Yet, in his Response, Plaintiff vehemently rebuffs this assumption.

> Plaintiff has never asserted a statutory claim for relief *under* the Food Safety Modernization Act (FSMA). Instead, Plaintiff's reports of potential FDA violations are identified strictly as 'protected activities' that triggered the retaliatory "best way out" plot. Defendant's legal analysis of FSMA-specific remedies is moot and irrelevant to the current proceeding.

(Doc. 233 at 17–18.)    After Defendant's generous assumption, not even the liberal construction standard for pro se pleadings can save Plaintiff from his own explicit disclaimer. Consequently, Defendants demonstrate that Plaintiff fails to sufficiently plead a retaliation claim related to reporting alleged FDA violations.

Even if the Court were to overlook Plaintiff's express disavowal, Plaintiff fails to provide any evidence that he exhausted the requisite administrative procedures prior to filing a FSMA retaliatory claim in federal court. The FSMA only permits an employee to bring an action in federal court "[i]f the Secretary [of Labor] has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination." § 399d(b)(4); *see also Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108, 120 (W.D.N.Y. 2014) (dismissing FSMA retaliation claim because "plaintiff admits that she has not complied with the jurisdictional prerequisite of filing an administrative complaint with, and obtaining a final order from (or failing to receive a final order within 210 days from), the Secretary of Labor"). Accordingly, the Court grants summary judgment on any FSMA retaliation claim for insufficient pleading, and in the alternative, for lack of jurisdiction.

For the foregoing reasons, the Court will only consider evidence related to

retaliation for reporting age discrimination in violation of the ADEA.

a.  Protected Activity

Defendant argues that Plaintiff fails to evidence he was engaged in protected activity protected under the ADEA.  Because Plaintiff brings this claim pursuant to the ADEA, he must demonstrate he "opposed age discrimination, or participated in investigations, proceedings, or litigation concerning age discrimination."  *Naeim v. McDonough*, No. 2:19-CV-06126-DDP (AFMx), 2022 WL 743514, at *9 (C.D. Cal. Mar. 11, 2022) (citing 29 U.S.C. § 626(d)).  Defendant's Motion addresses the four protected activities identified in Plaintiff's SAC: (1) June 2022 HR email; (2) September 2022 Employee Relations complaint; (3) March 2023 Equal Employment Opportunity Commission ("EEOC"); and (4) January 2023 FDA report.  It argues that none are protected under the ADEA.

The Court agrees that the June 2022 HR email, September 2022 complaint, and January 2023 FDA report are not protected under the ADEA.  The June 2022 HR email and the September 2022 complaint never mention age; they only discuss Plaintiff's frustration with Steve Nerovich, (Doc. 256-5 at 18–20), and frustrations with management regarding relegated tasks, software access, and COVID-19 leave, (Doc. 256-7 at 20–21).  Because these complaints, and any reported FDA violations, do not concern age discrimination, they are not protected activity under the ADEA.  *See Stewart v. Wilkie*, No. 2:18-CV-01887-ODW (SKx), 2019 WL 1114866, at *3 (C.D. Cal. Mar. 11, 2019) ("None of Plaintiff's conduct concerns unlawful employment discrimination based on age; as such, it is not protected activity under the ADEA.").  However, Plaintiff's March 2023 EEOC charge does mention age discrimination, this is ostensibly protected activity under the ADEA.  (Doc. 251-1 at 123.)  Although Defendant is correct that the seven-page charge only mentions age discrimination in passing, the Court must view this evidence in light most favorable to Plaintiff.  Therefore, Plaintiff's EEOC charge is evidence of protected activity under the ADEA.

Plaintiff asserts a litany of other protected activity in his CSOF.  (Doc. 229 at 140–41.)  However, after reviewing all the evidence Plaintiff cites regarding these

- 15 -

activities, the Court finds that none mention or complain of age discrimination. Accordingly, Plaintiff has only shown he engaged in one protected activity—filing an EEOC charge alleging age discrimination.  The Court now determines if Defendant retaliated against Plaintiff in response to his EEOC charge.

b.  Adverse Employment Action & Causation

Plaintiff's SAC identifies four alleged adverse actions: (1) reduced job duties; (2) increased isolation from the team and meetings; (3) issuance of a warning letter; and (4) termination.  (Doc. 35 at 38.)  Defendant argues that the first three are not adverse employment actions. (Doc. 249 at 20–21.)  The Court agrees that termination is the only applicable adverse action here.  However, the Court need not determine that the first three actions are not adverse.  Even if true, they occurred before Defendant was aware of Plaintiff's EEOC charge.  Therefore, they cannot establish causation.

"For a plaintiff to establish a causal connection between the protected activity and the adverse employment action, he must prove that the person taking the adverse employment action knew about the plaintiff's protected activity at the time he made the adverse decision." *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1182 (N.D. Cal. 2014).  Plaintiff filed his EEOC charge in March 2023.[3] "[W]henever a charge is filed by a person alleging that an employer has engaged in an unlawful employment practice, the EEOC shall serve a notice of the charge on such employer within ten days, and shall make an investigation thereof." *Huan Wang v. Air China Ltd.*, No. 17-CV-6662 (MKB) (JO), 2020 WL 1140458, at *9 (E.D.N.Y. Mar. 9, 2020) (citation modified) (quoting 42 U.S.C. § 2000e-5(b)).  Defendants admit they received Plaintiff's EEOC charge on March 23, 2023.  (Doc. 249 at 20.)  This date is fatal to nearly all of Plaintiff's alleged adverse actions.  (Doc. 35 at 38; Doc. 229 at 160–74.)

According to Plaintiff, Defendant: reduced Plaintiff's job duties in May and June

---

[3]  Plaintiff's SAC alleges he filed his EEOC complaint on January 25, 2023.  However, Plaintiff does not attach this alleged charge and therefore cannot evidence this date. Conversely, Defendant attaches Plaintiff's EEOC charge, which shows Plaintiff filed on March 22, 2023.  (Doc. 251-1 at 123.)  Therefore, the Court finds that Plaintiff filed his EEOC charge in March 2023.

2022 (Doc. 35 at 8; Doc. 256-1 at 5); isolated Plaintiff from the team and team meetings in June 2022 (Doc. 35 at 12); issued the Written Warning letter on February 21, 2023 (Doc. 256-10 at 55); temporarily denied Plaintiff software access from June to November 2022 (Doc. 256-1 at 49; Doc. 251-1 at 180–82, 235); denied Plaintiff's time off requests in September 2022 (Doc. 256-9 at 177); demoted Plaintiff from Manufacturing Engineering to Manufacturing in September 2022 (Doc. 256-1 at 23); and excluded Plaintiff from a secret meeting in January 2023 (Doc. 35 at 9).   Importantly, only the May 2023 investigation and October 2023 termination took place after the EEOC charge.

The investigation is not an adverse employment action.   On May 2, 2023, James Martinez submitted an employee relations ticket with concerns regarding Plaintiff's performance.  (Doc. 256-10 at 24.)  Plaintiff was on short-term medical leave at this time. HR investigated these concerns through August 2023.  (*Id.* at 167–71.)  On June 22, HR planned to "interview Daniel on Monday and place him on paid leave while the concerns are investigated."  (*Id.* at 171.)  After that note, Plaintiff applied for six more weeks of short-term medical leave.  (*Id.*)  The HR note then confirmed the plan to suspend Plaintiff that Monday if he showed up.  (*Id.*)  However, Plaintiff's leave was extended until August. (*Id.*)  HR did not suspend Plaintiff because he then took long term disability and never returned to work.

Plaintiff argues the foregoing investigation is an adverse employment action because it shows a premeditated intent to suspend him and was a "sham" because HR interviewed unqualified witnesses.  (Doc. 233 at 14; Doc. 229 at 169.)  However, neither reason is sufficient.  "A suspension that is merely proposed but never actually issued or served does not rise to the level of a sufficiently final or lasting adverse action necessary to support a prima facie claim" of retaliation under the ADEA.  *Cefalu v. Holder*, No. C12-0303 TEH, 2013 WL 5315079, at *13 (N.D. Cal. Sept. 23, 2013) (citing cases). Additionally, "an inadequate investigation after an alleged discrimination act does not generally qualify as an adverse employment action for a retaliation claim."  *Garcia v. Chandler-Gilbert Cmty. Coll.*, No. CV-22-02169-PHX-JJT, 2026 WL 926049, at *10 (D.

Ariz. Apr. 6, 2026). Accordingly, the May 2023 investigation is not an adverse employment action.

Plaintiff's termination is too remote to infer causation. Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). In other words, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Nguyen v. Harker*, No. 2:21-CV-04327-VAP-ASX, 2022 WL 3012530, at *6 (C.D. Cal. Feb. 24, 2022) (citation modified). Defendant terminated Plaintiff in October 2023—seven months after the EEOC charge. (Doc. 35 at 21; Doc. 249 at 8.) Therefore, the Court cannot infer that the EEOC charge caused his termination. *Bach v. Cmty. Ties of Am., Inc.*, No. CV 18-00103 LEK-WRP, 2019 WL 6054675, at *11 (D. Haw. Nov. 15, 2019), *aff'd*, 840 F. App'x 182 (9th Cir. 2021) ("The Ninth Circuit previously concluded an eight-month gap between a plaintiff's protected activity and the retaliation does not permit an inference of causation.").

Based on the foregoing, Plaintiff fails to show that Defendant terminated him in retaliation for filing an EEOC charge. Accordingly, the Court grants summary judgment in favor of Defendants as to Plaintiff's ADEA retaliation claim.

### 3. *Age Discrimination*

To establish an ADEA age discrimination claim, Plaintiff "must demonstrate that he: (1) was member of the protected class (at least age 40); (2) was performing his job satisfactorily; (3) suffered an adverse employment action; and (4) was replaced by a substantially younger employee with equal or inferior qualifications." *Cefalu*, 2013 WL 5315079, at *4. The Court agrees with Defendant that Plaintiff fails to evidence that he was replaced by a substantially younger employee.

Plaintiff's replacement theory fails for multiple reasons. Plaintiff's SAC alleges that Steve Nerovich took over his responsibility to lead team meetings in May 2022 and continued thereafter. (Doc. 35 at 21.) As noted, Nerovich's replacement cannot infer age

discrimination because Nerovich is not substantially younger than Plaintiff. Curiously, for the first time, Plaintiff's Response asserts that Gilbert Mendez, not Nerovich, replaced Plaintiff in leading the May 2022 team meetings. (Doc. 233 at 16.) There is no evidence to support this contention. In fact, Plaintiff's evidence contradicts this claim. Exhibit K, attached to the SAC, is a screenshot of a text message saying "we'll have Steve lead the 1015" meeting. (Doc. 35-1 at 27.) Therefore, Plaintiff cannot establish a prima facia case of age discrimination because he cannot show that he was replaced by someone substantially younger than him.

Accordingly, the Court grants summary judgment in Defendants favor as to Plaintiff's ADEA age-discrimination claim.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiff's Motion for Reconsideration (Doc. 248) and **denying as moot** Plaintiff's Emergency Motion for Extension of Time to File a Response to Defendant's Motion for Summary Judgement (Doc. 218) and Motion to Defer Ruling on Defendant's Motion for Summary Judgment (Doc. 228).

**IT IS FURTHER ORDERED granting** Defendant's Motion for Summary Judgment (Docs. 196, 249) and Motion to Strike (Doc. 263). The Clerk of Court shall strike (Docs. 259, 260) as unauthorized filings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant.

Dated this 4th day of June, 2026.

_____

Honorable Susan M. Brnovich
United States District Judge